UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAMAR ALEXANDER CARTER,

               Plaintiff,

v.

KRISTEN JONES et al.,

               Defendants.

_____/

Case No. 1:24-cv-1348

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC, MDOC Dietician Kristen Jones, and the following MCF staff: Nurse Practitioner Katina Kuerth, Correctional Officer Unknown Purcey, and Grievance Coordinator Unknown Barnes. (Compl., ECF No. 1, PageID.1–2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that he has a "G6PD deficiency"[2] and sickle cell disease. (*Id.*, PageID.4, 5; *see* ECF No. 1-4, PageID.20.) On November 9 and 12, 2024, "Plaintiff sent kites to health care regarding ongoing stomach pain, frequent bowel movements, and loss of appetite."[3] (Compl., ECF No. 1, PageID.4.) Thereafter, on November 13, 2024, Plaintiff asked a non-party unit officer "to call health care due to [Plaintiff] vomiting blood." (*Id.*) "Healthcare told [the non-party officer] that they were not going to see the Plaintiff." (*Id.*) At some point later that same day after calling his family members, Plaintiff "tried to walk back to his cell when he fell out due to his stomach locking up on him." (*Id.*) Defendant Purcey then "called for other officers, who came and escorted [Plaintiff] to healthcare." (*Id.*) Thereafter, Plaintiff was taken the hospital. (*Id.*)

Upon Plaintiff's return to MCF at around 4:30 p.m. on November 13, 2024, Plaintiff received a notice of intent and contraband removal form "saying Purcey took [Plaintiff's] JP6 tablet." (*Id.*) Plaintiff asked Defendant Purcey why she had taken his tablet, and in response, Defendant Purcey stated that Plaintiff "shouldn't be 'smoking that shit.'" (*Id.*) Plaintiff told Defendant Purcey that he did not smoke and that his "stomach had been messed up for three weeks." (*Id.*) Defendant Purcey said that Plaintiff "should have waited on a regular unit officer to come to the desk before [Plaintiff] decided to fake fall out." (*Id.*)

On November 15, 2024, Plaintiff "sent a kite to the dietician requesting for a medical diet, due to him having G6PD deficiency." (*Id.*) In response, Plaintiff received a response from a non-party nurse, stating that Plaintiff could "discuss with the [medical provider] at upcoming appointment." (*Id.*) Plaintiff states that he sent another kite to the dietician on November 17, 2024, but "he never received a response back." (*Id.*) Additionally, that same day, "after eating in the

---

[2] As set forth in the medical records that Plaintiff attached to his complaint, "G6PD" is an abbreviation for "glucose-6-phosphate dehydrogenase." (ECF No. 1-4, PageID.20.)

[3] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's filings.

chow hall for lunch around 3pm, [Plaintiff] went to the officer's desk and asked [a non-party officer] to call healthcare due to stomach pain." (*Id.*)

Subsequently, on November 19, 2024, Plaintiff talked to Defendant Kuerth "about his stomach pain and his concern that the chow hall food [wa]s causing his stomach pain." (*Id.*, PageID.4–5.) Plaintiff asked Defendant Kuerth if she could "place him on his medical diet, which she then Googled G6PD and said, 'Wow, you can't eat nothing.'" (*Id.*, PageID.5.) Defendant Kuerth told Plaintiff that she would "email the dietician [Plaintiff's] request." (*Id.*)

On November 21, 2024, Plaintiff had stomach pain and "shortness of breath" after eating lunch in the chow hall. (*Id.*) At around 5:15 p.m., Plaintiff asked a non-party correctional officer to contact healthcare, and a non-party nurse told Plaintiff that "healthcare has a plan in place for you, so just wait until you get a callout." (*Id.*) About fifteen minutes later, at 5:30 p.m., Plaintiff again asked the non-party correctional officer to contact healthcare, and the non-party nurse told Plaintiff to "wait for second shift." (*Id.*) Fifteen minutes later, at 5:45 p.m., Plaintiff talked to a non-party sergeant "about his stomach problems" and "shortness of breath," and the non-party sergeant told Plaintiff that he did not "have any control over healthcare." (*Id.*)

Subsequently, at 6:05 p.m., Plaintiff asked another non-party officer to contact healthcare, and the non-party nurse told Plaintiff to come to healthcare "when med lines are called." (*Id.*) When Plaintiff went to healthcare as directed, he was examined by the non-party nurse, who told Plaintiff that he had "gallstones . . . [and] that's what is causing your pain[;] you have to watch what you eat." (*Id.*) The non-party nurse gave Plaintiff "educational papers about gallstones," and told Plaintiff she would "call the medical provider to see what to do with [Plaintiff]." (*Id.*) After speaking with the medical provider, the non-party nurse told Plaintiff they were "not sending [him]

out[] [be]cause [they] both believe[d] the pain from the gallstones [wa]s causing the shortness of breath." (*Id.*, PageID.6.)

The next day, November 22, 2024, Plaintiff "sent a third kite to the dietician regarding his medical diet." (*Id.*) Plaintiff received a response to his kite from a non-party nurse, stating: "Referred to the dietician." (*Id.*) Plaintiff then sent letters to the non-party warden and non-party deputy warden at MCF, but he never received a response. (*Id.*)

On November 26, 2024, Plaintiff "received in the mail a special diet denial, with a snack bag detail, and educational papers on G6PD deficiency." (*Id.*) Plaintiff then "sent a fourth kite to the dietician explaining that prior to [Defendant] Jones['s] solution to avoid food, the Plaintiff ha[d] tried that solution which still caused stomach pain." (*Id.*)

Thereafter, on December 1, 2024, Plaintiff "sent a kite requesting to speak with the medical provider or nurse practitioner due to Plaintiff['s] medical diet being denied[] and loss of weight." (*Id.*) The next day, December 2, 2024, Plaintiff had an appointment with a non-party nurse. (*Id.*) The non-party nurse stated: "I don't know why she denied your medical diet[] when she ha[s] your file and can see your disease, and all your labs show that you have this disease and can't eat the food[;] I don't know what's wrong with her." (*Id.*)

On December 3, 2024, Plaintiff "sent a kite to the grievance coordinator[,] [Defendant] Barnes[,] requesting a Step I Grievance Form[] due to the Plaintiff being on modified access from October 9, 2024[,] to January 7, 2025." (*Id.*) Defendant Barnes "ignored the Plaintiff['s] grievance request, which [Defendant] Barnes has done on multiple occasions." (*Id.*)

The next day, December 4, 2024, while Plaintiff was at the chow hall, a non-party food steward "grabbed [Plaintiff's] snack bag detail out [of Plaintiff's] hand." (*Id.*, PageID.6–7.) The non-party food steward told Plaintiff that there was "no snack bag today[;] come back tomorrow,"

so Plaintiff "ate the grilled cheese since he was denied his snack bag." (*Id.*, PageID.7.) Later that day, at around 7:20 p.m., Plaintiff had stomach pain, and non-party officers took Plaintiff to healthcare. (*Id.*) At healthcare, Plaintiff "was accused of lying about having sickle cell disease" and accused of being high. (*Id.*) A non-party nurse examined Plaintiff and gave him "a generic version of Pepto Bismol, which is on the list for unsafe medication for [Plaintiff]." (*Id.*)

On December 5, 2024, Plaintiff "sent a fifth kite to the dietician explaining that he was denied the snack bag and the grilled cheese caused his stomach pain." (*Id.*) On December 6, 2024, Plaintiff had an appointment with a non-party nurse, who asked Plaintiff how the antacid had worked. (*Id.*) Plaintiff informed the non-party nurse that "it didn't," and that he "had to deal with the pain." (*Id.*) Two days later, on December 7, 2024, Plaintiff sent letters to the warden and deputy warden. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants Jones and Kuerth violated his Eighth Amendment rights as related to his requests for a "medical diet," and that Defendants Purcey and Barnes violated his First Amendment rights by retaliating against him. (*Id.*, PageID.7–8.) The Court also construes Plaintiff's complaint to raise First Amendment and Fourteenth Amendment claims against Defendant Barnes regarding Plaintiff's use of the grievance procedure. Finally, as to Defendant MDOC, Plaintiff claims that the MDOC "is part of this claim[] because" Defendants Jones, Kuerth, Purcey, and Barnes "are all employed by the [MDOC]," and the MDOC is "liable for their employees['] negligence of any kind." (*Id.*, PageID.8.) Plaintiff seeks declaratory and injunctive relief, as well as monetary damages. (*Id.*, PageID.10–11.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Non-Parties Discussed in the Complaint

In Plaintiff's complaint, he discusses the actions of several non-party individuals. (*See generally* Compl., ECF No. 1.) These individuals are not identified as Defendants in either the case

caption of the complaint or the section of the form complaint where Plaintiff lists the Defendants in this suit. (*See id.*, PageID.1, 2.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action).

Accordingly, any intended claims against the non-party individuals discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

## B.    Defendant MDOC

Plaintiff names the MDOC as a Defendant; however, Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is

absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.

Accordingly, Plaintiff fails to state a claim against Defendants MDOC upon which relief can be granted, and Plaintiff's claims against the MDOC will be dismissed for failure to state a claim.

### C.    Eighth Amendment Claims—Defendants Jones and Kuerth

Plaintiff alleges that Defendants Jones and Kuerth violated his Eighth Amendment rights as related to Plaintiff's requests for a "medical diet." (Compl., ECF No. 1, PageID.7–8.)

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges that Defendant Jones, the dietician, denied Plaintiff's "medical diet request," despite "acknowledging [Plaintiff's] medical illness G6PD." (Compl., ECF No. 1, PageID.7.) Further, Plaintiff alleges that Defendant Kuerth, a nurse practitioner at MCF, could have "order[ed] a medical diet for [Plaintiff] and the dietician [would have] ha[d] to follow the order," but that Kuerth "knew of [Plaintiff's] illness and decided to let the dietician handle the situation." (*Id.*, PageID.8.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although Plaintiff has by no means proven his claims, and some of his allegations lack specificity, the Court will not dismiss Plaintiff's Eighth Amendment claims against Defendants Jones and Kuerth on initial review.

### D.      First Amendment Retaliation Claims—Defendants Purcey and Barnes

Plaintiff alleges that Defendants Purcey and Barnes violated his First Amendment rights when Purcey retaliated against Plaintiff "by shaking his room down and taking his tablet" and when Barnes retaliated against Plaintiff by "ignoring his grievance request[s]" while he was on modified grievance access. (Compl., ECF No. 1, PageID.8.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

11

### 1.      Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references submitting kites and requests for grievances, both of which are sufficient to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### 2.      Adverse Action

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Here, Plaintiff alleges that Defendant Purcey retaliated against Plaintiff "by shaking his room down and taking his tablet." (Compl., ECF No. 1, PageID.8.) A cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves the cell in disarray and results in the confiscation or destruction of materials. *See Bell*, 308 F.3d at 606 (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Therefore, at this stage of the proceedings, the Court assumes, without deciding, that Defendant Purcey's cell search and confiscation of Plaintiff's tablet constituted an adverse action.

As to Defendant Barnes, Plaintiff alleges that Barnes retaliated against him by "ignoring his grievance request[s]" while he was on modified grievance access. (Compl., ECF No. 1, PageID.8.) As an initial matter, the Court notes that with respect to Plaintiff's placement on

modified grievance access, the Sixth Circuit has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g.*, *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). Furthermore, although the Sixth Circuit has held that destruction of grievances and interference with grievances may be an adverse action for purposes of a retaliation claim, *see Richards v. Perttu*, 96 F.4th 911, 918-19 (6th Cir. 2024), Plaintiff alleges only that Defendant Barnes "ignore[ed] his grievance request[s]." (Compl., ECF No. 1, PageID.8.) However, a claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). And, § 1983 liability may not be imposed simply because an official failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Under these circumstances, Plaintiff fails to show that Defendant Barnes engaged in active unconstitutional conduct, and Plaintiff fails to show that Barnes's actions constituted adverse action for purposes of Plaintiff's First Amendment retaliation claim. Accordingly, Plaintiff fails to state a First Amendment retaliation claim against Defendant Barnes.

### 3.    Retaliatory Motive

Finally, even assuming that Plaintiff alleged facts sufficient to satisfy the first and second elements for his retaliation claim against Defendant Purcey, Plaintiff's allegations regarding the third element of a First Amendment retaliation claim fall short.

To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. Here, as

relevant to Plaintiff's retaliation claim against Defendant Purcey, Plaintiff alleges that on November 9 and 12, 2024, he "sent kites to health care regarding ongoing stomach pain, frequent bowel movements, and loss of appetite." (Compl., ECF No. 1, PageID.4.) On November 13, 2024, Plaintiff "tried to walk back to his cell when he fell out due to his stomach locking upon him." (*Id.*) Defendant Purcey then "called for other officers, who came and escorted [Plaintiff] to healthcare," and Plaintiff was taken the hospital. (*Id.*) Upon Plaintiff's return to MCF, Plaintiff received a notice of intent and contraband removal form "saying Purcey took [Plaintiff's] JP6 tablet." (*Id.*) Plaintiff asked Defendant Purcey why she had taken his tablet, and in response, Defendant Purcey stated that Plaintiff "shouldn't be 'smoking that shit.'" (*Id.*) Plaintiff told Defendant Purcey that he did not smoke and that his "stomach had been messed up for three weeks." (*Id.*) Defendant Purcey said that Plaintiff "should have waited on a regular unit officer to come to the desk before [Plaintiff] decided to take fall out." (*Id.*)

Based on the facts alleged by Plaintiff, he fails to allege facts to support an inference that the alleged adverse actions—the cell search and confiscation of the tablet—were motivated by his protected conduct. Specifically, the facts alleged by Plaintiff suggest that any adverse action taken by Defendant Purcey was motivated by Purcey's belief that Plaintiff had been smoking an unspecified substance, which had caused Plaintiff to "fall out." (*See id.*) It does not matter whether Defendant Purcey's belief was correct; the facts alleged in the complaint show that it was this belief, rather than any protected conduct, that resulted in the cell search and confiscation of the tablet. Therefore, as to Plaintiff's First Amendment retaliation claim against Defendant Purcey, Plaintiff's "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in

14

complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for all of the reasons set forth above, Plaintiff's First Amendment retaliation claims against Defendants Purcey and Barnes will be dismissed for failure to state a claim.

### E.    Claims Regarding Plaintiff's Use of the Grievance Procedure

Although not specifically articulated by Plaintiff, the Court generously construes Plaintiff's complaint to raise First Amendment and Fourteenth Amendment claims against Defendant Barnes regarding Plaintiff's use of the grievance procedure at MCF.

As to any intended Fourteenth Amendment due process claims, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process, did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated

by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendant Barnes's actions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Accordingly, any intended claims against Defendant Barnes regarding Plaintiff's use of the grievance procedure will be dismissed for failure to state a claim.

### F.    State Law Negligence Claims

When setting forth his claims, Plaintiff references "negligence." (Compl., ECF No. 1, PageID.8.) Liberally construing Plaintiff's complaint, as the Court is required to do, the Court construes Plaintiff's complaint to raise state law negligence claims against Defendants.

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants MDOC, Purcey, and Barnes will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

Because Plaintiff continues to have pending federal claims against Defendants Jones and Kuerth, the Court will exercise supplemental jurisdiction over Plaintiff's state law negligence claims against these Defendants.

## <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*.

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants MDOC, Purcey, and Barnes will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants MDOC, Purcey, and Barnes will be dismissed without prejudice.

The Court will also dismiss without prejudice, for failure to state a claim, any intended claims against the non-party individuals discussed in the complaint.

Plaintiff's Eighth Amendment claims regarding Plaintiff's "medical diet" and state law negligence claims against Defendants Jones and Kuerth remain in the case.

An order consistent with this opinion will be entered.


Dated:     March 21, 2025                         /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge