UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAMAR ALEXANDER CARTER #262495,                    Case No. 1:24-cv-1348

                        Plaintiff,

            v.                                     Hon. Robert J. Jonker
                                                   U.S. District Judge

KRISTEN JONES, et al.,

                        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation addresses:

- Defendant Nurse Practitioner (NP) Katina Kuerth's motion to dismiss for failure to state a claim or in the alternative for summary judgment based on exhaustion (ECF No. 11);

- Plaintiff's response in opposition to NP Kuerth's motion to dismiss or for summary judgment (ECF No. 12);

- NP Kuerth's reply to Plaintiff's response in opposition (ECF No. 14);

- Defendant Dietician Kristen Jones' motion for summary judgment based on exhaustion (ECF No. 16);

- Plaintiff's unauthorized sur-reply to NP Kuerth's reply (ECF No. 20);

- Plaintiff's response in opposition to Dietician Jones' motion for summary judgment (ECF No. 22);

- Dietician Jones' reply to Plaintiff's response in opposition (ECF No. 24); and

- NP Kuerth's motion to strike Plaintiff's unauthorized sur-reply (ECF No. 25).

Plaintiff—state prisoner Lamar Alexander Carter—filed suit under 42 U.S.C. § 1983 on December 26, 2024.  (ECF No. 1.)  In his verified complaint, Carter alleges:

- First Amendment retaliation by Muskegon Correctional Facility (MCF) staff Correctional Officer Unknown Purcey, Grievance Coordinator Unknown Barnes, and the Michigan Department of Corrections (MDOC) (*id.*, PageID.8);

- Eighth Amendment deliberate indifference by MDOC Dietician Jones, MCF staff NP Kuerth, and the MDOC (*id.*, PageID.7–8); and

- Various state law claims against all Defendants (*id.*, PageID.4–8).

On March 21, 2025, this Court issued a screening opinion dismissing Defendants MDOC, CO Purcey, and GC Barnes for failure to state a claim under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c).  (ECF Nos. 4, 5.)  The Court also dismissed Carter's state law claims against those Defendants without prejudice. (*Id.*)

Following the screening opinion, only Carter's Eighth Amendment deliberate indifference and related state law negligence claims against Dietician Jones and NP Kuerth (hereafter the "Defendants") remain in the case.  (ECF No. 4, PageID.75.) Specifically, Carter alleges Defendants were deliberately indifferent to his serious

need for a medical diet related to his glucose-6-phospohate dehydrogenase (G6PD) diagnosis and affiliated stomach problems.  (ECF No.1, PageID.6−8.)

On May 30, 2025, NP Kuerth moved for dismissal or in the alternative for summary judgment.  (ECF No. 11.)  NP Kuerth first argues that Carter's Eighth Amendment claim should be dismissed because the facts alleged do not plausibly amount to deliberate indifference.  (*Id.*, PageID.111−12.)  NP Kuerth next argues she is entitled to summary judgment because Carter did not properly exhaust his administrative remedies before filing this lawsuit.  (*Id.*, PageID.114.)

On July 1, 2025, Dietician Jones moved for summary judgment, likewise arguing that Carter did not properly exhaust his administrative remedies before filing this lawsuit.  (ECF No. 17, PageID.186.)  Jones further argues the Court should decline to exercise supplemental jurisdiction over any state law negligence claims.  (*Id.*, PageID.189.)

In the opinion of the undersigned—and as already addressed in the March screening opinion—the facts alleged, construed in the light most favorable to the non-movant, state a plausible claim of deliberate indifference.  Further, there are genuine issues of material fact as to whether Carter exhausted the administrative remedies available to him regarding his claims against Defendants.

It is respectfully recommended that the Court deny both Dietician Jones's motion for summary judgment and NP Kuerth's motion to dismiss or for summary judgment.

## II. Relevant Factual Allegations

Carter's allegations against Defendants were set forth in the Court's March screening opinion.   (ECF No. 4, PageID.61−65.)   There, the Court provided in pertinent part:

> In Plaintiff's complaint, he alleges that he has a "G6PD deficiency" and sickle cell disease. ([Compl., ECF No. 1], PageID.4, 5; *see* ECF No. 1-4, PageID.20.) On November 9 and 12, 2024, "Plaintiff sent kites to health care regarding ongoing stomach pain, frequent bowel movements, and loss of appetite." (Compl., ECF No. 1, PageID.4.) Thereafter, on November 13, 2024, Plaintiff asked a non-party unit officer "to call health care due to [Plaintiff] vomiting blood." (*Id.*) "Healthcare told [the non-party officer] that they were not going to see the Plaintiff." (*Id.*) At some point later that same day after calling his family members, Plaintiff "tried to walk back to his cell when he fell out due to his stomach locking up on him." (*Id.*) Defendant Purcey then "called for other officers, who came and escorted [Plaintiff] to healthcare." (*Id.*) Thereafter, Plaintiff was taken the hospital. (*Id.*)
>
> [. . .]
>
> On November 15, 2024, Plaintiff "sent a kite to the dietician requesting for a medical diet, due to him having G6PD deficiency." (*Id.*) In response, Plaintiff received a response from a non-party nurse, stating that Plaintiff could "discuss with the [medical provider] at upcoming appointment." (*Id.*) Plaintiff states that he sent another kite to the dietician on November 17, 2024, but "he never received a response back." (*Id.*) Additionally, that same day, "after eating in the chow hall for lunch around 3pm, [Plaintiff] went to the officer's desk and asked [a non-party officer] to call healthcare due to stomach pain." (*Id.*)
>
> Subsequently, on November 19, 2024, Plaintiff talked to Defendant Kuerth "about his stomach pain and his concern that the chow hall food [wa]s causing his stomach pain." (*Id.*, PageID.4–5.) Plaintiff asked Defendant Kuerth if she could "place him on his medical diet, which she then Googled G6PD and said, 'Wow, you can't eat nothing.'" (*Id.*, PageID.5.) Defendant Kuerth told Plaintiff that she would "email the dietician [Plaintiff's] request." (*Id.*)
>
> On November 21, 2024, Plaintiff had stomach pain and "shortness of breath" after eating lunch in the chow hall. (*Id.*) At around 5:15 p.m., Plaintiff asked a non-party correctional officer to contact healthcare,

4

and a non-party nurse told Plaintiff that "healthcare has a plan in place for you, so just wait until you get a callout." (*Id.*)

[…]

The next day, November 22, 2024, Plaintiff "sent a third kite to the dietician regarding his medical diet." (*Id.*) Plaintiff received a response to his kite from a non-party nurse, stating: "Referred to the dietician." (*Id.*) Plaintiff then sent letters to the non-party warden and non-party deputy warden at MCF, but he never received a response. (*Id.*)

On November 26, 2024, Plaintiff "received in the mail a special diet denial, with a snack bag detail, and educational papers on G6PD deficiency." (*Id.*) Plaintiff then "sent a fourth kite to the dietician explaining that prior to [Defendant] Jones['s] solution to avoid food, the Plaintiff ha[d] tried that solution which still caused stomach pain." (*Id.*) Thereafter, on December 1, 2024, Plaintiff "sent a kite requesting to speak with the medical provider or nurse practitioner due to Plaintiff['s] medical diet being denied[] and loss of weight." (*Id.*) The next day, December 2, 2024, Plaintiff had an appointment with a non-party nurse. (*Id.*) The non-party nurse stated: "I don't know why she denied your medical diet[] when she ha[s] your file and can see your disease, and all your labs show that you have this disease and can't eat the food[;] I don't know what's wrong with her." (*Id.*)

On December 3, 2024, Plaintiff "sent a kite to the grievance coordinator[,] [Defendant] Barnes[,] requesting a Step I Grievance Form[] due to the Plaintiff being on modified access from October 9, 2024[,] to January 7, 2025." (*Id.*) Defendant Barnes "ignored the Plaintiff['s] grievance request, which [Defendant] Barnes has done on multiple occasions." (*Id.*)

## III. NP Kuerth's Motion to Dismiss

### A. Legal Standard

Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks omitted).  Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted).  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

Plaintiff is proceeding *pro se*.  As such, his pleadings are subject to less stringent standards than those prepared by attorneys. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).

## B.  Eighth Amendment – Deliberate Indifference

A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the Plaintiff must allege facts showing that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The subjective component requires a Plaintiff to allege facts showing that officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.

## C.  Analysis

NP Kuerth contends Carter's complaint fails to plausibly allege she was deliberately indifferent to Carter's serious medical needs by deferring the decision on his diet request to Dietician Jones.  (ECF No. 11, PageID.110–13.)

This Court evaluated Carter's claims under the motion to dismiss standard in its March screening opinion and found the facts alleged plausibly state a claim of deliberate indifference.  (ECF No. 4.)  The standard of review remains the same and

there have been no significant developments in the record or law. However, the undersigned will briefly address the arguments in NP Kuerth's motion to dismiss and reply in support of the same. (ECF Nos. 11, 14.)[1]

NP Kuerth primarily argues that Carter's complaint fails because his claims rely entirely on his disagreement with NP Kuerth's medical judgment in deferring decisions on specialty diets to the dietician. (ECF No. 11, PageID.111.) In support, she cites *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976), where the Sixth Circuit noted federal courts are "generally reluctant to second guess medical judgments" where "the dispute is over the adequacy of the treatment [provided]." (ECF No. 11, PageID.110−11.)

But the Sixth Circuit has more recently held a medical provider cannot "simply provide <u>some</u> treatment for the inmates' medical needs" to avoid Eighth Amendment liability; rather, they must treat each patient without consciously exposing them to an excessive risk of serious harm. *Richmond v. Huq*, 885 F.3d 928, 940 (6th Cir. 2018) (emphasis added). Further, a deliberately indifferent delay in giving or obtaining any treatment at all may amount to a violation under the Eighth Amendment where a medical provider consciously disregards a patient's needs. *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir.2001); *cf Jones v. Corr. Med. Servs., Inc.* 845 F. Supp. 2d 824, 840 (W.D. Mich. 2012) (finding that reasonably deferring to a consulting medical

---

[1]     NP Kuerth does not dispute Carter's condition was sufficiently serious to meet the objective component of his Eighth Amendment claim. Thus, the undersigned only addresses NP Kuerth's argument that the complaint fails to allege the subjective component, i.e., that she realized a substantial risk of serious harm to Carter existed, and that she disregarded that risk. *See Farmer*, 511 U.S. at 837.

specialist is not alone sufficient to protect medical providers from deliberate indifference claims).

In the ten days prior to Carter's November 19, 2024, appointment with NP Kuerth, he complained to healthcare about serious stomach pain, frequent bowel movements, loss of appetite, and vomiting blood. (ECF No. 1, PageID.4.) Carter kited healthcare four times, went to healthcare twice, and was once sent offsite to the emergency room related to his stomach problems in that period. (*Id.*, PageID.4.) Despite self-selecting to avoid GP6D trigger foods, Carter says he experienced a pain crisis after eating in chow hall. (*Id.*, PageID.13.)

Carter's appointment with NP Kuerth was set to address these issues and his request for medical diet. (*Id.*, PageID.5.) During the appointment, Carter says NP Kuerth Googled GP6D and remarked that he "can't eat anything." (*Id.*)

Despite Carter's recent recorded medical history and NP Kuerth's alleged awareness of the significant dietary limitations for GP6D patients, NP Kuerth chose not to provide what Carter claims was "readily available" relief. *Westlake*, 537 F.2d at 860. Subsequently, in the week between Carter's appointment and receiving a denial from Dietician Jones, Carter claims he was unable to eat for five days. (*See* ECF No. 1-13, PageID.29.)

The MDOC policy governing therapeutic diet services during the relevant period allows for nurse practitioners to order medical diets in accordance with MDOC

Diet Manual guidelines.[2]    MDOC Policy Directive (PD) 04.07.101 (effective September 1, 2018), ¶¶ B, G.  While all therapeutic diet orders must be reviewed by registered dieticians, *id.*, ¶ H, Carter plausibly alleges that NP Kuerth knowingly exposed Carter to an excessive risk of serious harm by unnecessarily delaying resolution of his diet request.[3]

The undersigned reiterates that Carter "has by no means proven his claims, and some of his allegations lack specificity."  (ECF No. 4, PageID.69.)  However, drawing all reasonable inferences in his favor, his allegations could support a claim that NP Kuerth was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that she "dr[e]w the inference." *Farmer*, 511 U.S. at 837.  Therefore, the undersigned respectfully recommends the Court deny NP Kuerth's motion to dismiss.

## IV.  Defendants' Motions for Summary Judgment

### A.  Verification

In ruling on a summary judgment motion, a court must decide whether a genuine issue of material fact remains.  Fed. R. Civ. P. 56(a).  The materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c).  Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the

---

[2]    While the undersigned recommends this Court strike Carter's unauthorized sur-reply raising this MDOC policy (addressed below), the policy itself remains a relevant public record.
[3]    Notably, it was Carter's own attempts to contact Dietician Jones directly—not NP Kuerth's alleged referral—that prompted a response as early as November 26, 2024.  (ECF No. 1-15, PageID.31.)  Dietician Jones remarks that Carter's November 22, 2024, health care request was the first she received.  (*Id.*)

same force and effect as an affidavit' for purposes of responding to a motion for summary judgment." *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992)); *see also Lamb v. Kendrick,* 52 F.4th 286, 296 (6th Cir. 2022) (finding that, in a summary judgment motion on the basis of exhaustion, defendants who failed to provide evidence disproving a prisoner's verified claims had not met their burden of persuasion.)  To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746.  *Id.*  In contrast, complaints that are unverified are not considered Rule 56 evidence.  *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019).

The undersigned recognizes that *pro se* plaintiffs, like Carter, are held to a less stringent pleading standard than parties represented by an attorney.  *Grinter v. Knight,* 532 F.3d 567, 577 (6th Cir. 2008).  At the summary judgment stage, *pro se* plaintiffs are thus not held to the same technical requirements as represented parties.  Still, *pro se* plaintiffs must use common sense in demonstrating there exists a genuine issue of material fact.

Here, Carter included with his complaint a sufficient declaration of veracity, shown below:

JIS CODE:POM

| STATE OF MICHIGAN JUDICIAL DISTRICT JUDICIAL CIRCUIT COUNTY | PROOF OF MAILING | CASE NO. and JUDGE |
|---|---|---|

Court address _____    Court telephone no. _____

Plaintiff's name, address, and telephone no.
Lamar Alexander Carter

Defendant's name, address, and telephone no. K. Jones, K. Kuerth, Purcey, Barnes, Michigan

I declare under the penalties of perjury that this proof of mailing has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

12·20·2024
Date

Lamar Carter
Signature

Lamar Carter
Name (type or print)

On the date below I sent by first-class mail a copy of original claim, exhibits, certificate of prisoner trust fund account activity, and affidavit.

to: Last names and addresses.
U.S. District Court
399 Federal Building
110 Michigan St.
Grand Rapids, MI 49503

I declare under the penalties of perjury that this proof of mailing has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

12·20·2024
Date

Lamar Carter
Signature

Lamar Carter
Name (type or print)

(ECF No. 1, Page ID.12.)

However, Carter's response in opposition to NP Kuerth's motion to dismiss or for summary judgment, sur-reply to NP Keurth's reply in support, and response in opposition to Dietician Jones's motion for summary judgment all lack sufficient declarations of veracity as called for in 28 U.S.C. § 1746.  (ECF Nos. 12, 20, 22.)

Therefore, only Carter's complaint and accompanying affidavit and exhibits shall be considered Rule 56(c) evidence.

### B.  Legal Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[4] or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### C.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212−16 (2007).  "[W]here the moving party has the burden—the plaintiff on

---

[4]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  However, when the exhaustion issue is intertwined with the merits of a claim, the Seventh Amendment requires a jury trial on the exhaustion issue. *Richards v. Perttu*, 605 U.S. __, 2025 WL 1698783 (June 18, 2025).

a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218−19; *Woodford v. Ngo*, 548 U.S. 81, 90−91 (2006). "Compliance with prison grievance procedures, therefore, is all that is

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id*. at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id*. (quoting *Booth*, 532 U.S. at 737*)*.  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*.  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

MDOC PD 03.02.130 (effective October 21, 2024) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within

two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control.  *Id.*, ¶ W.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution.  *Id.*, ¶¶ W, CC.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent.  *Id.*, ¶¶ CC, EE.   The PD also provides the following directions for completing grievance forms: "The issue should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.*, ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC PD 03.02.130, ¶¶ JJ.  The respondent at Step II is designated by the policy, *e.g.,* the Step II clinical authority as determined by the Bureau of Health Care Services (BHCS) Administrator for medical care grievances. *Id.*, ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.,*¶¶ NN.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due.  *Id.*  The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.*, ¶ OO.

A prisoner is placed on modified access for filing an excessive number of grievances (three within a thirty calendar day span) that are rejected or when found guilty of misconduct for filing an unfounded grievance.  *Id.*, ¶ PP.  The initial modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance.  *Id.*  While on modified access, the prisoner can only obtain grievance forms through the Step I Grievance Coordinator, who determines whether the issue is grievable and otherwise meets criteria outlined under the grievance policy.  *Id.*, ¶ SS. MDOC policy further requires the Grievance Coordinator to "maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial." *Id.*

The Sixth Circuit has held that modified access to the grievance process does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances. *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001).  Rather, it merely requires the prisoner obtain permission from the grievance coordinator to file a grievance.  *Id.*

Where a prisoner on modified access follows the procedure set out in ¶ SS and a grievance officer improperly denies a prisoner's request for a grievance form, then that "would be the end of all possible administrative remedies with regard to that grievance." *Walker v. Michigan Department of Corrections,* 128 Fed. Appx. 441, 446

17

(6th Cir. 2005). A court would then have jurisdiction to hear a related federal claim, as all administrative remedies that would have been exhausted. *Id.*

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all*

18

relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).

### D. Analysis

Defendants argue they are entitled to summary judgment because Carter did not file any grievances against either NP Kuerth or Dietician Jones before initiating this lawsuit. (ECF No. 11, PageID.114; ECF No. 17, PageID.186.) Carter contends he requested Step I forms to grieve Defendants but never received them. (ECF No. 1, PageID.6.)

During the relevant period, Carter was on modified access to the grievance process. (ECF No. 17-4, PageID.213.) Prisoners on modified access are "able to obtain grievance forms only through the Step I Grievance Coordinator." MDOC PD 03.02.130, ¶ SS. A grievance form is only provided "if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy." *Id.*

On December 3, 2024, Carter alleges  that he wrote Grievance Coordinator Loretta Barnes requesting Step I forms to grieve Defendants for the conduct alleged

in this lawsuit.  (ECF No. 1, PageID.6.)  In support, he provides a transcribed "Hand Copy" of his request, shown below:



(ECF No. 1-23, PageID.39.)

Carter claims GC Barnes "ignored [his] grievance request, which [she] has done on multiple occasions."  (ECF No. 1, PageID.6.)  In support, Carter cites to additional "Hand Copy" kites requesting Step I grievance forms in the relevant period, which he claims Barnes also ignored.  (ECF No. 1, PageID.6; *see* ECF No. 1-27, PageID.43 (November 16, 2024, Kite) and ECF No. 1-28, PageID.44 (December 4, 2024, Kite).)

Dietician Jones and NP Kuerth both argue there is no evidence that the alleged December 3, 2024, kite was sent to GC Barnes.   (ECF No. 17, PageID.187; ECF No. 14, PageID.170.)  Dietician Jones provided with her motion an unnotarized affidavit from GC Barnes, who states that MDOC policy requires her to maintain a record of all requests for Step I grievance forms from inmates on modified access, whether the request was approved or denied, and the reason for denial.  (ECF No. 17-4, PageID.209.)  GC Barnes attaches to her affidavit the "only [three] requests for Step I grievance forms Carter made while on modified access."  (ECF No. 17-4, PageID.210.)  The alleged December 3, 2024, kite is not included in these records.

In her reply to Carter's response in opposition, Dietician Jones points out that the mere existence of a kite lacking indicia of receipt is proof only that Carter composed a request, not that he sent it.  (ECF No. 24, PageID.241.)

But as noted above, the Court must "draw all justifiable inferences in favor of the party opposing the motion."  *Matsushita Elec.*, 475 U.S. at 587.  Whether Carter sent a kite requesting Step I forms to grieve Defendants on the conduct alleged in this lawsuit—or more pointedly, whether Carter sent the alleged December 3, 2024, kite which appears to do just that—is a question of material fact in determining if he properly exhausted his administrative remedies. *Lewis v. Axley*, 2017 WL 673916, at *3 (W.D. Mich. Jan. 20, 2017), *report and recommendation adopted*, 2017 WL 661513 (W.D. Mich. Feb. 17, 2017) (denying summary judgment where defendant stated "he would never have refused to process a grievance," but plaintiff's "verified complaint ma[de] the opposite claim," even where plaintiff exhausted multiple claims in the

same timeframe).  If Carter did send a request for Step I grievance forms that went ignored,[5]  he properly exhausted the administrative remedies available to him.  *See Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 626 (6th Cir. 2011) (holding a prisoner may lack available remedies when prison officials deny him the necessary grievance forms or fail to provide access to grievance forms).

In the undersigned's opinion, Defendants have failed to meet their burden under Rule 56.  Accordingly, the undersigned recommends that both NP Kuerth's and Dietician Jones's motions for summary judgment be dismissed.

### V.  NP Kuerth's Motion to Strike Carter's Unauthorized Sur-Reply

On July 18, 2025, Carter filed an unauthorized sur-reply arguing that MDOC PD 04.07.101 gives nurse practitioners the authority to order therapeutic diets and repeating other arguments asserted in previous filings.  (ECF No. 20, PageID.225.) NP Kuerth filed a motion to strike Carter's unauthorized sur-reply on July 22, 2025, arguing that his filing violated local court rules.  (ECF No. 25.)

Rule 7.2(c) of this Court's Local Civil Rules allow for a response to a dispositive motion and then a reply to the response.  W.D. Mich. LCivR 7.2(c).  Under the same rule, "[t]he court may permit or require further briefing."  *Id.*  Carter never requested leave from this Court to file his sur-reply.  *Pro se* litigants are expected to know and comply with the Federal Rules of Civil Procedure as well as the Local Rules.  *See*

---

[5]    These facts are distinguished from cases where designated respondents fail to respond to filed grievance forms themselves.  In that scenario, the grievance policy requires a prisoner to continue the grievance process even when no response has been received by submitting to the next step.  MDOC PD 03.02.130 ¶ AA; *see Brown v. Lewis*, No. 1:18-CV-347, 2018 WL 4475412, at *4 (W.D. Mich. Sept. 19, 2018).

*Fields v. Cnty. of Lapeer*, No. 99-2191, 2000 WL 1720727, at *2 (6th Cir. Nov. 8, 2000);

*Williams Huron Gardens 397 Tr. v. Waterford Twp.*, No. 18-12319, 2019 WL 659009,

at *1 (E.D. Mich. Jan. 26, 2019) ("Though plaintiffs are representing themselves, they

are nevertheless, expected to know and adhere to the rules governing litigation in the

court.").

Here, the Court reviewed Carter's sur-reply and found it did not add anything

that would change the undersigned's recommendation.  Therefore, the undersigned

respectfully recommends that the Court strike Carter's unauthorized sur-reply.

### VI.  Recommendation

The undersigned respectfully recommends that this Court deny Defendant

Jones's motion for summary judgment and Defendant Kuerth's motion to dismiss or

in the alternative for summary judgment.


Dated:   August 7, 2025                         /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within
fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P.
72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR
72.3(b).  Failure to file timely objections may constitute a waiver of any further right
of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*,
474 U.S. 140 (1985).