UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

LAMAR CARTER #262495,

Plaintiff,

v.

KRISTEN JONES, et al.,

Defendants.

Case No. 1:24-cv-1348

Hon. Robert J. Jonker
U.S. District Judge

# REPORT AND RECOMMENDATION

## I. Introduction

This Report and Recommendation addresses the following:

- a motion for summary judgment filed by Defendant Kristen Jones, ECF No. 36, Plaintiff's response, ECF No. 41, and Jones's reply, ECF No. 46; and
- a motion for summary judgment filed by Defendant Katina Kuerth, N.P., ECF No. 39, Plaintiff's response, EFC No. 43, and Kuerth's reply, ECF No. 45.

Plaintiff – state prisoner Lamar Alexander Carter – filed a verified civil complaint under 42 U.S.C. § 1983 alleging that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments while he was incarcerated at Muskegon Correctional Facility (MCF) in Muskegon, MI. ECF No. 1. Following this Court's screening opinion, only Plaintiff's Eighth Amendment deliberate indifference claims and state law negligence claims against Defendants Jones and

Kuerth remain in the case. ECF No. 4, PageID.76. Plaintiff claims that Dietician Jones and NP Kuerth were deliberately indifferent to his need for a specific medical diet.

In the opinion of the undersigned, there are no genuine disputes of material fact as to Plaintiff's Eighth Amendment deliberate indifference claims. It is respectfully recommended that the Court grant Defendants' motions for summary judgment.

## II. Factual Allegations

This Court issued a screening opinion on March 21, 2025. In that opinion, the Court provided the following summary of Plaintiff's factual allegations:

> In Plaintiff's complaint, he alleges that he has a "G6PD deficiency" and sickle cell disease. (*Id.*, PageID.4, 5; *see* ECF No. 1-4, PageID.20.) On November 9 and 12, 2024, "Plaintiff sent kites to health care regarding ongoing stomach pain, frequent bowel movements, and loss of appetite." (Compl., ECF No. 1, PageID.4.) Thereafter, on November 13, 2024, Plaintiff asked a non-party unit officer "to call health care due to [Plaintiff] vomiting blood." (*Id.*) "Healthcare told [the non-party officer] that they were not going to see the Plaintiff." (*Id.*) At some point later that same day after calling his family members, Plaintiff "tried to walk back to his cell when he fell out due to his stomach locking up on him." (*Id.*) Defendant Purcey then "called for other officers, who came and escorted [Plaintiff] to healthcare." (*Id.*) Thereafter, Plaintiff was taken the hospital. (*Id.*)
>
> Upon Plaintiff's return to MCF at around 4:30 p.m. on November 13, 2024, Plaintiff received a notice of intent and contraband removal form "saying Purcey took [Plaintiff's] JP6 tablet." (*Id.*) Plaintiff asked Defendant Purcey why she had taken his tablet, and in response, Defendant Purcey stated that Plaintiff "shouldn't be 'smoking that shit.'" (*Id.*) Plaintiff told Defendant Purcey that he did not smoke and that his "stomach had been messed up for three weeks." (*Id.*) Defendant Purcey said that Plaintiff "should have waited on a regular unit officer to come to the desk before [Plaintiff] decided to fake fall out." (*Id.*)

On November 15, 2024, Plaintiff "sent a kite to the dietician requesting for a medical diet, due to him having G6PD deficiency." (*Id.*) In response, Plaintiff received a response from a non-party nurse, stating that Plaintiff could "discuss with the [medical provider] at upcoming appointment." (*Id.*) Plaintiff states that he sent another kite to the dietician on November 17, 2024, but "he never received a response back." (*Id.*) Additionally, that same day, "after eating in the chow hall for lunch around 3pm, [Plaintiff] went to the officer's desk and asked [a non-party officer] to call healthcare due to stomach pain." (*Id.*)

Subsequently, on November 19, 2024, Plaintiff talked to Defendant Kuerth "about his stomach pain and his concern that the chow hall food [wa]s causing his stomach pain." (*Id.*, PageID.4–5.) Plaintiff asked Defendant Kuerth if she could "place him on his medical diet, which she then Googled G6PD and said, 'Wow, you can't eat nothing.'" (*Id.*, PageID.5.) Defendant Kuerth told Plaintiff that she would "email the dietician [Plaintiff's] request." (*Id.*)

On November 21, 2024, Plaintiff had stomach pain and "shortness of breath" after eating lunch in the chow hall. (*Id.*) At around 5:15 p.m., Plaintiff asked a non-party correctional officer to contact healthcare, and a non-party nurse told Plaintiff that "healthcare has a plan in place for you, so just wait until you get a callout." (*Id.*) About fifteen minutes later, at 5:30 p.m., Plaintiff again asked the non-party correctional officer to contact healthcare, and the non-party nurse told Plaintiff to "wait for second shift." (*Id.*) Fifteen minutes later, at 5:45 p.m., Plaintiff talked to a non-party sergeant "about his stomach problems" and "shortness of breath," and the non-party sergeant told Plaintiff that he did not "have any control over healthcare." (*Id.*)

Subsequently, at 6:05 p.m., Plaintiff asked another non-party officer to contact healthcare, and the non-party nurse told Plaintiff to come to healthcare "when med lines are called." (*Id.*) When Plaintiff went to healthcare as directed, he was examined by the non-party nurse, who told Plaintiff that he had "gallstones . . . [and] that's what is causing your pain[;] you have to watch what you eat." (*Id.*) The non-party nurse gave Plaintiff "educational papers about gallstones," and told Plaintiff she would "call the medical provider to see what to do with [Plaintiff]." (*Id.*) After speaking with the medical provider, the non-party nurse told Plaintiff they were "not sending [him] out[] [be]cause [they] both believe[d] the pain from the gallstones [wa]s causing the shortness of breath." (*Id.*, PageID.6.)

The next day, November 22, 2024, Plaintiff "sent a third kite to the dietician regarding his medical diet." (*Id.*) Plaintiff received a response to his kite from a non-party nurse, stating: "Referred to the dietician." (*Id.*) Plaintiff then sent letters to the non-party warden and non-party deputy warden at MCF, but he never received a response. (*Id.*)

On November 26, 2024, Plaintiff "received in the mail a special diet denial, with a snack bag detail, and educational papers on G6PD deficiency." (*Id.*) Plaintiff then "sent a fourth kite to the dietician explaining that prior to [Defendant] Jones['s] solution to avoid food, the Plaintiff ha[d] tried that solution which still caused stomach pain." (*Id.*)

Thereafter, on December 1, 2024, Plaintiff "sent a kite requesting to speak with the medical provider or nurse practitioner due to Plaintiff['s] medical diet being denied[] and loss of weight." (*Id.*) The next day, December 2, 2024, Plaintiff had an appointment with a non-party nurse. (*Id.*) The non-party nurse stated: "I don't know why she denied your medical diet[] when she ha[s] your file and can see your disease, and all your labs show that you have this disease and can't eat the food[;] I don't know what's wrong with her." (*Id.*)

On December 3, 2024, Plaintiff "sent a kite to the grievance coordinator[,] [Defendant] Barnes[,] requesting a Step I Grievance Form[] due to the Plaintiff being on modified access from October 9, 2024[,] to January 7, 2025." (*Id.*) Defendant Barnes "ignored the Plaintiff['s] grievance request, which [Defendant] Barnes has done on multiple occasions." (*Id.*)

The next day, December 4, 2024, while Plaintiff was at the chow hall, a non-party food steward "grabbed [Plaintiff's] snack bag detail out [of Plaintiff's] hand." (*Id.*, PageID.6–7.) The non-party food steward told Plaintiff that there was "no snack bag today[;] come back tomorrow," so Plaintiff "ate the grilled cheese since he was denied his snack bag." (*Id.*, PageID.7.) Later that day, at around 7:20 p.m., Plaintiff had stomach pain, and non-party officers took Plaintiff to healthcare. (*Id.*) At healthcare, Plaintiff "was accused of lying about having sickle cell disease" and accused of being high. (*Id.*) A non-party nurse examined Plaintiff and gave him "a generic version of Pepto Bismol, which is on the list for unsafe medication for [Plaintiff]." (*Id.*)

On December 5, 2024, Plaintiff "sent a fifth kite to the dietician explaining that he was denied the snack bag and the grilled cheese caused his stomach pain." (*Id.*) On December 6, 2024, Plaintiff had an appointment with a non-party nurse, who asked Plaintiff how the

> antacid had worked. (*Id.*) Plaintiff informed the non-party nurse that "it didn't," and that he "had to deal with the pain." (*Id.*) Two days later, on December 7, 2024, Plaintiff sent letters to the warden and deputy warden. (*Id.*)

ECF No. 4, PageID.61-64.

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251−52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Analysis

Carter argues that Dietician Jones and NP Kuerth violated his Eighth Amendment rights by denying him a special diet for G6PD deficiency.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834

(1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *Phillips v. Roane Cnty.*, 534 F.3d 531, 539-40 (6th Cir. 2008). Where a prisoner challenges their treatment as inadequate, a prisoner must show more than a serious medical need. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). To establish the objective component in a situation where a prisoner asserts that the care received was inadequate, the prisoner must prove grossly inadequate care, which generally requires the introduction of medical evidence typically in the form of expert testimony. *Id.*

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence .

. . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

The subjective component was summarized in *Rhinehart*. There, the court of appeals stated the following:

> [T]he plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

Here, Carter is not arguing that he did not receive medical care; instead he argues that the treatment provided was inadequate for his dietary needs. The Court is sympathetic to Carter's multiple medical conditions and the discomfort he felt prior to the celiac diagnosis. However, as stated above, the Sixth Circuit has established that a deliberate indifference claim based on inadequate treatment requires more than a serious medical need to satisfy the objective component. *Phillips*, 14 F.4th at

535. Plaintiff has not established grossly inadequate care by either Dietician Jones or NP Kuerth through medical evidence or medical experts.

In fact, the medical evidence on the record reflects that Dietician Jones instructed Carter in late November 2024, about his ability to self-select a sufficient diet from the regular prison menu for G6PD deficiency. And Dietician Jones ordered an afternoon snack to supplement Carter's caloric intake.

Assessment:
There is not a restrictive diet for G6PD deficiency. Fava beans should be avoided, but these are not on MDOC menus. Soy, peanuts, and peas may be a trigger for G6PD. Pt is able to self select from the regular line to avoid many of these foods. Pt has maintained his weight through the last year within about 5#. He is on the lower side of his IBW range. Because he may have to avoid certain foods, I will add an afternoon snack to help supplement his calories.

Plan:
1. special diet is denied
2. an afternoon snack has been added
3. RD will provide written diet education
4. RD will f/u in 60 days

Diet Orders:

| Start Date | | Expiration Date |
|---|---|---|
| 11/26/2024 | Snack Bag - Afternoon Snack | 05/26/2025 |

ECF No. 37-3, PageID.351. This assessment and medical plan were co-signed by NP Kuerth. *Id.*, PageID.353.

Furthermore, when the self-selection diet did not ease Plaintiff's symptoms, Dietician Jones ordered celiac testing in early February 2025, which NP Kuerth once again co-signed.

COMPLAINT **1** Provider: Jones, Kristen [KJ4] RD

Chief Complaint: Diet Consultation

Subjective: I met with Pt today via telemed to discuss his diet concerns. He stated that beginning in Oct he started having abdominal pain, frequent BMs, sometimes throwing up. He stopped eating in the chow hall in Nov and feels better. He has not picked up his snack back as he does not attend chow hall. Pt states he can't have soy or peas.

We reviewed that he is able to self select to avoid peas, soy and peanuts and that MDOC does not serve fava beans which is the main food that triggers G6PD. It is likely his GI symptoms are unrelated to G6PD.

Pt has had significant weight loss since Oct.

I would like to test him for celiacs disease and have a full RAST food allergy test done to r/o an allergy or immune disorder. Pt does consume gluten and soy containing food from the store.

*Id.*, PageID.356.

Plaintiff argues that Defendants' course of treatment did not comply with the Physician Assistant (PA) Natalie E. Orey's medical recommendations on May 1, 2025. PA Orey wrote the following in Plaintiff's medical records:

> Lamar A Carter is a 33 y.o. male with past medical history of sickle cell anemia, G6PD deficiency who presents to the GI clinic today with a referral for chronic abdominal pain, food intolerance and underweight. Patient is a prisoner and is brought in with 2 guards. Referral from prison states that he has chronic abdominal pain with food intolerance and difficult maintaining a normal BMI. He had a celiac panel which was negative except for a tissue transglutaminase IgG of 15.
>
> -Recommend that he start back on a gluten diet.
> -Tissue transglutaminase IgG is not specific nor diagnostic for celiac disease. Can be seen with gluten sensitivity vs normal finding. However would like to rule out celiac disease with duodenal biopsy as noted above. He however should be back on a gluten-free diet to obtain accurate results.
> -Would have him avoid fava beans with his history of G6PD deficiency. He notes that symptoms are worse with soy, peanuts and peas and green beans. Would have him avoid these foods. Could consider specific IgE food allergy testing for these sensitivities. Will defer back to his prisoner provider
> -He reports that he is overall feeling better. He is not having as much abdominal pain and has been gaining weight. He can follow-up as needed pending results from EGD

ECF No. 43-1, PageID.522,529.

PA Orey explicitly deferred to the prison provider in her assessment. Dietician Jones and NP Kuerth created a plan of action for Plaintiff's dietary concerns, and when that plan did not correct Plaintiff's symptoms, Defendants ordered additional testing. Thus, in the opinion of the undersigned, Plaintiff has not established through medical evidence that Defendants provided grossly inadequate care to satisfy the objective component of a deliberate indifference claim.

Furthermore, even if Plaintiff could satisfy the objective component, he has failed to support the subjective component of an Eighth Amendment claim. Defendant Jones submitted an affidavit explaining that once she received a kite from Carter about a special diet, she reviewed Carter's past medical records, reviewed diet

information for G6PD deficiency, and ordered an afternoon snack. Dietician Jones attests:

> 10. On November 19, 2024, Carter had an appointment with Nurse Practitioner Kuerth, who requested a dietary evaluation, and I added Carter to my schedule for a review.
>
> 11. On November 22, 2024, Carter sent a kite that got logged as a Dietitian Request on November 23, 2024. This is the first kite I saw from Carter.
>
> 12. When I review dietary requests, I investigate what is medically necessary for the patient based on nutritional needs and their medical condition.

13. The MDOC Diet Manual also provides guidelines about diets that are available within MDOC and information about which diets are appropriate for which medical conditions.

14. There are no specific diets for G6PD deficiency because each individual may struggle with different triggers.

15. I reviewed Carter's medical history, notes from other providers, literature from The G6PD Deficiency Foundation and Carter's store purchase history.

16. Carter's Oncology Doctor who has treated him since 2016 instructed him to avoid fava beans, tonic water, and blueberries. None of which the MDOC serves.

17. The G6PD Deficiency Foundation says Legumes (e.g. Fava Beans, Windsor Beans, Horse Bean, Bell Bean, English Dwarf Bean, Haba Bean, Tick Bean, Pigeon Bean and Silkworm Bean); Soy, Peanuts, Peas, Fenugreek, and other legumes are possible triggers.

18. Artificial dyes found in processed foods are identified as harmful G6PDd triggers.

19. The only items the MDOC serves in the above list of possible triggers, is soy, peanuts, peas, and some artificial dyes, all of which can be avoided by self-selecting menu items.

20. Upon reviewing Carter's store purchases, I noticed he purchases items that contain possible triggers, both with artificial dyes, such as Skittles, Cheetos, and Jelly; and soy, such as Spicy Cheesy Rice,

> Buffalo Wing Blue Cheese Chips, BBQ Chips, Jalapeno Chips, Flaming Hot Cheetos, Hot Sauce, etc.
>
> 21. Although I could not identify Carter's triggers and his own purchases may have been the cause, since I knew he would need to avoid certain foods, I recommended a snack back of cheese and crackers. The medical provider approved the snack bag.

ECF No. 37-2, PageID.338-40.

Additionally, Dietician Jones further attests that when Carter continued to experience symptoms, she followed up with the Chief Medical Officer.

> 25. When Carter responded with another kite saying he had tried self-selecting and was still getting sick, I inquired of the Assistant Chief Medical Officer Buskirk, whether a therapeutic diet could be developed for Carter. I was informed that a therapeutic diet was recently denied for another prisoner because self-selection was the best way for individuals to avoid foods as they wish. I also spoke with another registered dietitian and was given the same response. Consequently, I

> informed Carter self-selection with the snack bag and store purchases were the best ways to avoid food triggers.
>
> 26. Notably, this year after additional medical testing, it was discovered Carter has celiac disease. He was put on a gluten free diet in April 2025 and given a gluten free evening snack.
>
> 27. At no time was I deliberately indifferent to Carter's medical needs, and instead I tried to ensure his medical and dietary needs were properly met.
>
> 28. At all times, I acted in good faith, within the scope of my authority as a registered dietitian for MDOC, and in accordance with my understanding of the statutes, rules, and policies governing the MDOC.

*Id.*, PageID. 340-41.

As noted above, the Court is obligated to view the evidence in the light most favorable to the non-moving party. Here, Jones's affidavit chronicles her ongoing efforts to treat Carter's condition.

Furthermore, regarding NP Kuerth, Carter's medical records establish that NP Kuerth referred Plaintiff for follow-up on complaints of stomach pain. ECF No. 39-1, PageID.422. NP Kuerth then co-signed Dietician Jones's recommendations throughout the process of treating Carter's dietary concerns. *Id.*, PageID.438, 442, 446, 448. Thus, Plaintiff has failed to establish factual evidence that could establish that Defendants Jones and Kuerth disregarded a known medical risk in a manner "equivalent to criminal recklessness." *Rhinehart*, 894 F.3d at 738.

In the opinion of the undersigned, Carter has failed to establish a genuine issue of material fact with respect to the subjective component of an Eighth Amendment claim.

**V. Qualified Immunity**

Defendant Jones argues that she is entitled to dismissal of the complaint against him based upon qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A

court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 78 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he

> confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63−64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate. *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

In the opinion of the undersigned, Defendant Jones is entitled to qualified immunity from liability because she did not violate Carter's clearly established Eighth Amendment rights.

## VI. State Law Claims

Plaintiff asserts state law negligence claims against Defendants Jones and Kuerth.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457

U.S. 922, 924 (1982). Plaintiff, however, seeks to invoke this Court's supplemental jurisdiction over state-law claims. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the undersigned recommends dismissal of Plaintiff's remaining federal claims. Thus, it is respectfully recommended that the Court decline to exercise supplemental jurisdiction over the state law claims.

**VII. Recommendation**

In the opinion of the undersigned, there are no genuine issues of material fact regarding Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Jones and Kuerth. It is respectfully recommended that the Court **grant** Defendants' motions for summary judgment. ECF No. 36 & 39. It is further recommended that the Court decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss this case.

Dated: July 17, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).